1  Chris W. Cantrell (SBN 290874)
   **DOYLE APC**
2  550 West B Street, Fourth Floor
   San Diego, CA 92101
3  Telephone: (619) 736-0000
   Facsimile: (619) 736-1111
4

5  Robert Salim, Esq. (admitted *pro hac vice*)
6  Lisa Causey-Street, Esq. (admitted *pro hac vice*)
   **SALIM BEASLEY LLC**
7  1901 Texas Street
8  Natchitoches, LA 71457
   Telephone: (318) 354-1818
9  Facsimile: (318) 354-1227
10 *Attorneys for Plaintiff*

11 (Additional Counsel for Plaintiff appear on signature page)

12

13                  UNITED STATES DISTRICT COURT
14                SOUTHERN DISTRICT OF CALIFORNIA

15                                    | Case No.: 3:19-cv-01825-WQH-JLB
16 ROSEMARY CADDY,                    |
                        Plaintiff,    |
17 v.                                 | PLAINTIFF'S MEMORANDUM OF
18                                     | POINTS AND AUTHORITIES IN
                                       | SUPPORT OF OMNIBUS MOTION
19 COLOPLAST CORP.,                    | IN LIMINE ON GENERAL ISSUES
                        Defendant.     |
20                                     | Hearing: December 4, 2020
21                                     | Time: 9:30 a.m.
22                                     | Courtroom: 14B
                                       | Judge: Hon. William Q. Hayes
23

24

25

26

27

28

# TABLE OF CONTENTS

MIL 1 – MOTION TO PRECLUDE DEFENDANT FROM USING 510(k) CLEARANCE OR COMPLIANCE WITH FDA REGULATIONS AS A DEFENSE ...………………………..………..……… 1

    A.   FDA Evidence is Irrelevant under Federal Rules of Evidence 401 and 402 …………………………………………………………4

    B.   FDA Evidence is Inadmissible under Federal Rule of Evidence 403 ….5

MIL 2 – MOTION TO EXCLUDE STATEMENTS REGARDING RANDOMIZED CONTROLLED TRIALS …………………………..5

MIL 3 – MOTION TO EXCLUDE ASSUMPTIONS ABOUT KNOWLEDGE OF UNDISCLOSED RISKS …………………………………………..7

MIL 4 – MOTION TO EXCLUDE EVIDENCE OF WHAT "PELVIC SURGEONS KNOW" …………………………………………………...8

MIL 5 – MOTION TO EXCLUDE STATEMENTS ABOUT PROFESSIONAL EDUCATION …………………………………… 9

MIL 6 – MOTION TO EXCLUDE HISTORY OF POLYPROPYLENE USE IN THE BODY …………………………………………………… 9

MIL 7 – MOTION TO EXCLUDE REFERENCES TO ASC OR LASC AS THE "GOLD STANDARD" OR "STATE OF THE ART" TREATMENT FOR PROLAPSE …………………………………11

MIL 8 – MOTION TO EXCLUDE STATEMENTS ABOUT PELVIC MESH LITIGATION ……………………………………..……..13

MIL 9 – MOTION TO EXCLUDE THE NUMBER OF WOMEN ALLEGEDLY TREATED WITH MESH ………………….……... 14

MIL 10 – MOTION TO EXCLUDE MENTION OF TORT REFORM, LITIGATION CRISIS OR LAWSUITS INCREASE HEALTH CARE COSTS …………………………………………….……15

MIL 11 – MOTION TO EXCLUDE WITNESSES PERSONAL EXPERIENCE AND PREFERENCES ……………………….....16

MIL 12 – MOTION TO EXCLUDE ANY FDA ADVISORY COMMITTEE
        RECOMMENDATIONS AND POSITION STATEMENTS
        FROM ADVOCACY GROUPS ……………………………………18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# *TABLE OF AUTHORITIES*

**CASES**

*Adams v. Laboratory Corp. of Am.*, 760 F.3d 1322 (11th Cir. 2014) ………………... 19

*Bellew v. Ethicon, Inc.,* 2014 WL 6680356 (S.D. W.Va. Nov. 25, 2014) …………..… 16

*Booker v. C.R. Bard, Inc.,* 2018 WL 1109554 (D. Az. Mar. 11, 2018) ……………… 12

*Campbell v. Boston Scientific Corp.,* 882 F.3d 70 (4th Cir. 2018) ………………… 2, 4, 5

*Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304 (11th Cir. 2017) …………..… passim

*Huskey v. Ethicon, Inc.,* 848 F.3d 151 (4th Cir. 2017) ………………...….. 2, 4, 5, 18

*Johns. v. Davol, Inc.,* 2020 U.S. Dist. LEXIS 166802 (S.D. Ohio Sept. 11, 2020) …... 12

*Kaiser v. Johnson & Johnson,* 947 F.3d 996 (7th Cir. 2020) …………………..…... 2, 4

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) …………………………… 17

*Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996) …………………………………3

*Nunez v. Coloplast Corp.,* 2020 WL 2315077 (S.D. Fla. May 11, 2020) ……. 3, 4, 15, 18

*Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008) …………………………………. 3

*Salinero v. Johnson & Johnson*, 2019 WL 7753438 (S.D. Fla. Sept. 25, 2013) ..…… passim

*Stevens v. Park, Davis & Co.* (1973) 9 Cal. 3d 51 ………………………………….. 7

*United States v. Urena*, 659 F.3d 903 (9th Cir. 2011) …………………...…… 18

**RULES**

Federal Rule of Evidence 401…………………………………..……….. passim

Federal Rule of Evidence 402…………………………………..……….. passim

Federal Rule of Evidence 403…………………………………..……….. passim

Federal Rule of Evidence 702…………………………………………..…….. passim

Federal Rule of Evidence 801…………………………………………..…….. passim

Federal Rule of Evidence 802…………………………………………… 7, 8, 9

Federal Rule of Evidence 803…………………………………………… 6, 7, 8

## MIL 1 – MOTION TO PRECLUDE DEFENDANT FROM USING 510(k) CLEARANCE OR COMPLIANCE WITH FDA REGULATIONS AS A DEFENSE

Plaintiff requests an order precluding introduction of any evidence or argument relating to or regarding testimony, evidence, or argument related to the FDA and its processes or regulations, including its 510(k) clearance process as it applies to the Restorelle Y, the 510(k) process as it applies to any other pelvic mesh devices, and Defendant's alleged compliance with any other FDA regulations. Evidence and testimony relating to the FDA is inadmissible because (1) the FDA's regulatory scheme and 510(k) process is not relevant to state tort law and should be excluded under Federal Rules of Evidence 401 and 402, and (2) the prejudicial value and confusing and misleading nature of FDA evidence far outweighs any purported probative value and should be excluded under Rule 403. The overwhelming weight of authority supports this exclusion. *Eghnayem v. Boston Scientific Corp.*, 873 F.3d 1304, 1317-19 (11th Cir. 2017) (affirming exclusion under Rules 402 and 403); *see also Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1018 (7th Cir. 2020) (affirming exclusion); *Campbell v. Boston Scientific Corp.*, 882 F.3d 70, 77-78 (4th Cir. 2018) (same); *Huskey v. Ethicon, Inc.*, 848 F.3d 151, 159-61 (4th Cir. 2017) (same).

The FDA's 510(k) clearance process has nothing to do with the safety of the Restorelle Y and is therefore completely irrelevant to the claims and defenses in this case. *Eghnayem*, 873 F.3d at 1317-18; *Nunez v. Coloplast Corp*, 2020 WL 2315077, at *24-25 (S.D. Fla. May 11, 2020). Other evidence may concern the regulatory history of related products. Such FDA evidence is inadmissible because it is not relevant and the prejudicial

value of evidence regarding the 510(k) process and other regulations far outweighs its probative value. *Fed. R. Evid.* 401-403.

Medical device entering the market via the 510(k) process have never been formally reviewed for safety or efficacy. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323 (2008); *Eghnayem*, 873 F.3d at 1317-18. Instead the FDA's 510(k) exemption is "intended to give manufacturers the freedom to compete, to a limited degree, with and on the same terms as manufacturers of medical devices that existed prior to 1976." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 494 (1996). The differences between the 510(k) process and premarket approval ("PMA") "are reflected in the intensity of review: '[I]n contrast to the 1,200 hours necessary to complete a PMA review, the 510(k) review is completed in an average of only 20 hours.'" *Eghnayem*, 873 F.3d at 1317.

The 510(k) and PMA "processes are 'by no means comparable.'" *Eghnayem*, 873 F.3d at 1318. Again, 510(k) clearance has nothing to do with the safety of the Restorelle Y Plaintiff received. *Lohr*, 518 U.S. at 494; *Eghnayem*, 873 F.3d at 1317. Thus, in another pelvic mesh litigation, the Eleventh Circuit has upheld the exclusion of 510(k) evidence: "As the district court explained, '[i]f 510(k) does not go to a product's safety and efficacy—the very subjects of the plaintiffs' products liability claims—then evidence of [the defendant's] compliance with 510(k) has not relevance to the [California] state law claims in this case." *Eghnayem*, 873 F.3d at 1318.

The Fourth Circuit also has sustained the exclusion of similar FDA 510(k) and regulatory evidence in a pelvic mesh case, *Campbell*, 882 F.3d at 77-78, including evidence regarding the regulatory history of Prolene sutures, another polypropylene product.

*Huskey*, 848 F.3d at 161-62. Likewise, the Seventh Circuit has found it "reasonable to conclude that the probative value of [FDA] evidence [is] minimal at best and that admitting it would precipitate a confusing sideshow over the details of the § 510(k) process." *Kaiser*, 947 F.3d at 1018. In another Coloplast mesh case recently transferred from MDL 2387, the district court likewise granted plaintiff's motion *in limine* to prevent Coloplast from introducing evidence of FDA approval of Restorelle mesh in an attempt to show its conduct was reasonable. *See Nunez*, 2020 WL 2315077 at *24-25.

### A. FDA Evidence Is Irrelevant under Federal Rules of Evidence 401 and 402

This trial concerns the defective design, manufacture, and warnings of Defendant's Restorelle Y pelvic mesh devices and whether these products were a cause of Ms. Caddy's injuries. The FDA's 510(k) clearance of mesh products for sale or the lack of enforcement action relative to any specific pelvic mesh device has nothing to do with these issues. Fed. R. Evid. 401-402. "Simply put, [mesh product's] § 510(k) clearance is remote from FDA safety review." *Kaiser*, 947 F.3d at 1018. Although the Restorelle Y was "cleared" through the FDA's 510(k) process, under which products are allowed to be marketed based on a finding of "substantial equivalence" to a product on the market before 1976, this was in no way a blessing by the FDA of the products' "safety and efficacy—the very subjects of the plaintiffs' products liability claims." *Eghnayem*, 873 F.3d at 1318. Because the Eleventh Circuit has already found FDA evidence "does not go" to the "very subjects" of Ms. Caddy's claims, the Court should exclude such evidence. *See id.*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE ON GENERAL ISSUES

**B.      FDA Evidence Is Inadmissible Under Federal Rule of Evidence 403**

FDA evidence is also inadmissible under Rule 403. In another pelvic mesh case, the Eleventh Circuit has upheld the exclusion of FDA evidence pursuant to Rule 403. *Eghnayem*, 873 F.3d 1304, 1317-19. Other courts agree. *Kaiser*, 947 F.3d at 1018; *Huskey*, 848 F.3d 151; Nor does FDA 510(k) evidence become admissible if the immediate predicate device was cleared post-1976. *Campbell*, 882 F.3d at 77-78; *Salinero v. Johnson & Johnson*, 2019 WL 7753438, at *4 (S.D. Fla. Sept. 25, 2019).

## MIL 2 – MOTION TO EXCLUDE STATEMENTS REGARDING RANDOMIZED CONTROLLED TRIALS

Defendant may attempt to make claims regarding the number of randomized controlled trials purportedly supporting the safety or efficacy of Restorelle Y. Plaintiff requests the Court prohibit evidence or argument advancing such claims under Federal Rules of Evidence 403 and 801, as it would be inadmissible hearsay, confusing to the jury, a waste of time, and unfairly prejudicial to Plaintiff.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Fed. R. Evid.* 801(c). Any statement by a witness regarding the subject or conclusions of a randomized controlled trial, such as a statement a certain number of randomized controlled trials supported the safety or efficacy of Restorelle Y, would constitute hearsay. Evidence regarding the number of randomized controlled trials purportedly supporting the safety or efficacy of Restorelle Y would not fall within the learned-treatise exception. *Fed. R. Evid.* 803(18). Such testimony would not be a statement

from a particular publication read into evidence, but rather would be the witness's opinion and summary of numerous randomized controlled trials, globally.

Even if the learned-treatise exception did apply, each trial, and certain statements contained therein, would have to be addressed individually. Not only does Rule 803(18) require this, but testimony a certain number of randomized controlled trials supporting the safety or efficacy of Restorelle Y would be misleading and unreliable. Because randomized controlled trials vary and have limitations, even if statements within a randomized control trial were admissible, they would only be admissible individually. They should not be lumped together in the form of a statement a certain number of trials are supportive of the device's safety or efficacy.

None of Defendant's experts has testified he or she has reviewed and analyzed each and every randomized control trial involving Restorelle Y. For this additional reason none of Defendant's witnesses should be permitted to testify as to the total number of randomized control trials supporting the safety and efficacy of Restorelle Y. Moreover, testimony as to the number of trials supporting Restorelle Y alleged safety or efficacy has little if any probative value; yet, the danger of unfair prejudice from Defendant telling the jury a large number of trials show the products are safe and effective is high. If such evidence were allowed, Plaintiff will be forced to attack the trials themselves, leading to a mini-trial on those issues, which would waste time and confuse the jury. *Fed. R. Evid.* 403.

## MIL 3 – MOTION TO EXCLUDE ASSUMPTIONS ABOUT KNOWLEDGE OF UNDISCLOSED RISKS

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE ON GENERAL ISSUES

The defense should be precluded from offering evidence that Defendant did not have to warn of Restorelle Y risks because they assumed the risks would be known by surgeons who would use mesh products. General, unverifiable hearsay statements and incompetent expert opinion, unsupported by any study or reliable foundation, a risk would be generally known about Restorelle Y is improper and extremely prejudicial.

Defendant should not be permitted to advance this position because it is contrary to California law, which alleviates a medical device manufacturer from its duty to warn the patient only if it provides "adequate warning of potential dangers" to the prescribing doctor. *Stevens v. Park, Davis & Co.* (1973) 9 Cal. 3d 51, 65. Defendant's failure to warn cannot be excused based on vague assertions and incompetent opinions that unnamed "physicians" of varying levels of knowledge and experience around the United States "already knew" the full range of risks with regard to Restorelle Y. Such mass introduction of unverifiable hearsay and uncorroborated speculation should be precluded. *Fed. R. Evid.* 801-803. Such speculative evidence also would confuse the jury and prejudice Plaintiff and should be excluded. *Fed. R. Evid.* 401-403.

## MIL 4 – MOTION TO EXCLUDE EVIDENCE OF WHAT "PELVIC SURGEONS KNOW"

Defendant may seek to introduce testimony or other evidence about the purported knowledge of pelvic or general surgeons regarding the risks and benefits of pelvic mesh procedures to argue they had no duty to warn of such risks. Such evidence should be excluded from trial, as it is merely hearsay and speculation and would be unfairly prejudicial to Ms. Caddy. *Fed. R. Evid.* 401-403, 801-802. Any "witness's testimony about

what all 'pelvic surgeons know'—as distinct from what that witness knows—would be speculative." *Salinero*, 2019 WL 7753438, at *9.

Defendant's failure to warn cannot be excused based on vague assertions and irrelevant opinions unnamed physicians of varying levels of knowledge and experience around the United States already knew the full range of risks with regard to Restorelle Y, without needing to be told. The defense must provide proper evidence establishing the existence of such alleged general knowledge before it may be admitted. Defendant should not be permitted to introduce unverifiable hearsay and uncorroborated speculation as to the supposed knowledge held by thousands of physicians. Evidence of such "knowledge" should be precluded. *Fed. R. Evid.* 401-403, 801-802; *Salinero*, 2019 WL 7753438, at *9. On this basis, Defendant should be barred from offering evidence and argument, absent proper foundation, regarding what surgeons generally know about the risks and benefits of pelvic mesh procedures. *Fed. R. Evid.* 401-403, 801-802.

## MIL 5 – MOTION TO EXCLUDE STATEMENTS ABOUT PROFESSIONAL EDUCATION

Plaintiff anticipates when deficiencies in the IFU, other labels and related documents, and other documents regarding Restorelle are pointed out to Defendant's fact and expert witnesses, they will vaguely respond that additional information was provided to physicians through "professional education." This testimony and argument should be precluded since it would be irrelevant and blatant hearsay, without any specificity or reliability. *Fed. R. Evid.* 401-402, 801-802. In the absence of proof a document was actually used in professional education (and *when*, *how*, and *by whom* it

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE ON GENERAL ISSUES

was used), such blanket hearsay references should be completely precluded. *Fed. R. Evid.* 801-802. Such testimony, documents, and argument would confuse and mislead the jury, and would be unfairly prejudicial to Plaintiff. *Fed. R. Evid.* 403. At most, Defendant should be limited to specific professional education documents used in training of Drs. Nager and Tan-Kim, who implanted the Restorelle Y, but only if a proper foundation is established showing specific education documents were actually reviewed in a training session attended by Drs. Nager or Tan-Kim.

## MIL 6 – MOTION TO EXCLUDE HISTORY OF POLYPROPYLENE USE IN BODY

Plaintiff anticipates Defendant will argue Restorelle Y is not defective because the base material is polypropylene, and this material has been safely used in the human body in sutures and in hernia mesh for many years. Permitting the defense to open the door with a generalized reference to a long history of "50 years" of safe use of polypropylene (lumping together all formulations and uses throughout the body) would implicate massive, imprecise hearsay, which would require extensive cross-examination and rebuttal evidence to explain the irrelevance and misleading nature of such a vague but powerful assertion to the jury. This will divert the jury's attention from the relevant issues, confuse and mislead the jury, and create a mini trial or an unnecessary sideshow on this issue. *Fed. R. Evid.* 403. Whether or to what extent polypropylene may have been used in the human body as sutures, or for hernia mesh in the abdomen, in general, does not disprove any claims in this case. As Coloplast's own expert concedes:

> All polypropylene graft material is not created equal. Differences in filament size and construction, weaving/braiding patterns, pore size and other

> characteristics can lead to very different performance characteristics. … In evaluating the suitability of polypropylene mesh for any surgical application, it is important to consider both the characteristics of the specific mesh device used and the particular surgical procedure at issue.

Expert Report of Dr. Patrick Culligan at 6-7, attached hereto as "Exhibit B." It would be improper, as Defendants' own expert appears to concede, to attempt to draw conclusions about the safety and efficacy of Restorelle Y from the use of completely distinct polypropylene mesh used to treat hernias or use as sutures.  The liability issues here center on whether Restorelle Y is defective for POP and whether Defendant failed to adequately warn of the risks.

Generalized statements about the safety of other products are irrelevant, prejudicial and inherently confusing. They would preclude the making of precise objections as well as focused  cross-examination. Even fairly specific arguments about other products should be precluded, as they will only waste time and potentially confuse the jury. *Fed. R. Evid.* 403. Should the Court be inclined to allow Defendant to defend based on suture or hernia-mesh evidence, it should limit the defense to specific devices, and require a proffer should be made before  trial so additional objections specific to the evidence can be addressed in advance, rather than when the jury is hearing the case. In reality, Defendant's goal in shifting the trial from the Restorelle Y to sutures would be to suggest to the jury the FDA already resolved this lawsuit against Plaintiff by approving the use of sutures containing polypropylene.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE ON GENERAL ISSUES

## MIL 7 – MOTION TO EXCLUDE REFERENCE TO ASC OR LASC AS THE "GOLD STANDARD" OR "STATE OF THE ART" TREATMENT FOR PROLAPSE

Plaintiff moves to preclude Defendant from introducing via testimony or other evidence any reference to abdominal sacrocolpopexy ("ASC") procedures as the "gold standard" or "state of the art" treatment for prolapse with an apical component. For example, Dr. Emily Cole, Defendant's case-specific expert, asserts that ASC "has long been considered the state of the art procedure for treating prolapse that includes apical descent." Expert Report of Emily Cole, MD, at 3, attached hereto as "Exhibit A." Dr. Cole cites no literature or supporting evidence for this statement, nor does she offer an explanation of what she means by "state of the art." *Id.*

Defendant should be precluded from offering any testimony or other evidence that ASC procedures are the "state of the art" or the "gold standard" treatment for prolapse. These terms are being used without explanation of what they mean and how it was determined that ASC meets these standards, meriting exclusion. Allowing such evidence would cause confusion to the jury, would risk misleading jurors, and would prejudice Plaintiff. This evidence should be excluded. *Fed. R. Evid.* 401-403; *see also Johns v. Davol, Inc.*, 2020 U.S. Dist. LEXIS 166802, at *413 (S.D. Ohio Sept. 11, 2020) (granting MIL precluding Bard from introducing any "gold standard" evidence); *Booker v. C.R. Bard, Inc.*, 2018 WL 1109554, at *5 (D. Az. Mar. 11, 2018) (before the court ruled on motions *in limine*, defendant agreed not to use or refer to their IVC filters as the "gold standard" after plaintiff moved to exclude any such reference).

Moreover, the risk of confusion and prejudice from introducing such evidence is exacerbated by the fact the "gold standard" and "state of the art" references do not relate to the Restorelle Y mesh at issue but rather to the surgical procedure—via abdominal sacrocolpopexy—the mesh was implanted. There are different surgical "procedures" in which mesh is implanted to treat pelvic organ prolapse, and ASC procedures are not exclusively linked to Restorelle Y mesh. Other mesh products are implanted via ASC. Whether the **procedure** is considered "state of the art" or the "gold standard" has no bearing on whether the **product** used in the procedure was defective. *Fed. R. Evid.* 401-403.

This case concerns defects with the Restorelle Y mesh Ms. Caddy received, not whether the ASC was the "gold standard." Whether the surgical procedure is "state of art" or the "gold standard" doesn't make the existence of any fact relating to whether the Defendant's product was defectively designed or whether Defendant failed to adequately warn of the risks of use of its product, any more or less probable. *Fed. R. Evid.* 401-402.

What little probative value these references might have, if any, is far outweighed by the prejudicial effect and potential juror confusion. *Fed. R. Evid.* 403. Terms like "state of the art" and "gold standard" could confuse the jury over the issues in the case, such as whether the Restorelle Y mesh was defective, and mislead the jurors into focusing on the ASC procedure through which the mesh was implanted. Therefore, any references to these terms should be excluded. *See Fed. R. Evid.* 401-403.

## MIL 8 – MOTION TO EXCLUDE STATEMENTS ABOUT
## PELVIC MESH LITIGATION

Any assertion this lawsuit is attorney-driven has no tendency to establish a fact of consequence to any element of Plaintiff's claims as more or less probable than it would be without such evidence. It is irrelevant and inadmissible. *Fed. R. Evid.* 401-402. How or why Ms. Caddy contacted a lawyer has absolutely no bearing on whether Restorelle Y is defective or whether Defendant was negligent or breached a warranty. *E.g.*, *Eghnayem*, 873 F.3d at 1319, 1321 (products liability claims); *Fed. R. Evid.* 401-402. Statements from the defense about counsel or suggesting counsel has driven this litigation through lawyer advertisements would be inherently prejudicial. *Fed. R. Evid.* 403; *see Salinero*, 2019 WL 7753438, at *8.

Any suggestion or statement mesh litigations or this case in particular is attorney-driven would be calculated to unfairly prejudice Ms. Caddy by criticizing her counsel. Such tactics are improper and imply Plaintiff's claims are meritless. Counsel is not on trial. Such evidence is inherently prejudicial given jurors' potential pre-conceived distrust of lawyers and would divert the jury's attention from the real issues here. It would encourage the jury to render a verdict based on its opposition to lawyers and their advertising rather than on evidence. *Fed. R. Evid.* 401-403.

## MIL 9 – MOTION TO EXCLUDE NUMBER OF
## WOMEN ALLEGEDLY TREATED WITH MESH

Defendant may attempt to offer evidence related to the amount of pelvic mesh used for treatment of pelvic organ prolapse (POP) and stress urinary incontinence (SUI) by women and physicians generally. Any testimony or other evidence on this point would

be speculative and would mislead and confuse the jury. The number of units sold of Restorelle Y does not reliably indicate the number of women who were actually implanted with these products. Defendant, moreover, are not the only mesh manufacturers. Thus, any reference to larger pelvic mesh usage across many or all product lines would be speculative, confusing, misleading, and unfairly prejudicial. As such, this evidence should be barred from trial. *Fed. R. Evid.* 401-403. In another Coloplast pelvic mesh case recently transferred out of the MDL for trial, the district court ruled that such testimony is inadmissible, noting testimony "that millions of women have not suffered complications from pelvic mesh" and "any related testimony are speculative and flatly impossible to prove." *Nunez*, 2020 WL 2315077 at *29-30. The district court continued noting "[w]ithout objective provable numbers for Coloplast to present, there is significant risk the jury would be confused and misled … present[ing] a situation where the prejudicial effect outweighs its probative value." *Id.* at *30; *see also Salinero*, 2019 WL 7753438, at *8.

The experience of other unnamed women who allegedly have been implanted with Restorelle Y or similar mesh products is not relevant to Ms. Caddy's specific injuries, and would be unfairly prejudicial and would mislead and confuse the jury. *Fed. R. Evid.* 401-403. Such evidence has no bearing whatever on whether Restorelle Y is defective or that Defendant was negligent. *Fed. R. Evid.* 401-402. The Eleventh Circuit rejected a similar argument in *Eghnayem*, 873 F.3d at 1320-21, finding a minimum defect threshold was not required to prove a pelvic mesh product was defective: the device "was either harmful or not." *Id.* at 1321. Such evidence also would lead to a mini-trial on experiences of many

other women and the various products used. Further, the purpose of such testimony and other evidence is simply to induce the jury to believe because many doctors have used pelvic mesh, it must mean the Restorelle Y are not unreasonably dangerous. *Fed. R. Evid.* 403.

## MIL 10 – MOTION TO EXCLUDE MENTION OF TORT REFORM, LITIGATION CRISIS OR LAWSUITS INCREASE HEALTHCARE COSTS

Neither the lawyers nor the witnesses should be allowed to make any statements about tort reform or a litigation crisis, or any negative comments about lawsuits generally, during the trial of this cause. Whether the legal process is subject to abuse, and whether corrective action ought to be undertaken, has nothing to do with the matters in dispute, making such statements irrelevant. *Fed. R. Evid.* 401. Only Congress and judges have jurisdiction over these matters. Juries are impaneled solely to answer questions about particular facts in dispute. Such statements would be highly prejudicial in that they would encourage the jury to reach a verdict based on extraneous matters, in an effort to protect the judicial system or the economy, which is simply not the jury's responsibility. *Fed. R. Evid.* 403.

Undeniably, questions regarding juror feelings about litigation generally may sometimes be appropriate in *voir dire*. This motion does not seek to restrict *voir dire* questioning but rather seeks to restrict declarative statements about the state of litigation and any reference to such matters during trial. This Court granted this motion in the *Bellew* case, noting defendants raised no opposition. *Bellew v. Ethicon, Inc.*, Civ. Act. No.

2:13-cv-22473, 2014 WL 6680356, at *2 (S.D. W.Va. Nov. 25, 2014).  This Court should do likewise here.

### MIL 11 – MOTION TO EXCLUDE WITNESSES' PERSONAL EXPERIENCE AND PREFERENCES

Defendant may seek to introduce testimony from their current and former employees, other lay witnesses, or experts, regarding their personal experiences with pelvic mesh devices, or those of friends or family. Also, they may elicit testimony by asking if the witness, or a family member, were suffering from pelvic organ prolapse or stress urinary incontinence, whether the witness would prefer pelvic mesh be implanted. The Court should prohibit such irrelevant and prejudicial evidence, especially where it concerns friends and family. *Fed. R. Evid.* 401-403, 802.

Any reference to a witness's, friend's, or family member's experience with pelvic mesh is irrelevant to the issues in this case, which are Ms. Caddy's experience with Restorelle Y. Such evidence in wholly unrelated to whether the subject medical devices are unreasonably dangerous, Defendant's negligence, other claims at issue or Plaintiff's injuries. One witness's personal experience has no bearing on the facts of this case. *Fed. R. Evid.* 401-402. And laypeople lack the requisite specialized knowledge to make an appropriate risk-benefit analysis and one which is methodologically sound. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

No medical records have been produced or depositions taken for non-parties, and Plaintiff is left without the ability to verify and challenge any claims of successful treatment and recovery. Extensive cross-examination would be required to delve into the

details of the non-parties' circumstances, surgeries, ailments, severity of injuries, type of pelvic mesh device at issue, length of implantation, and then compare and contrast those of Ms. Caddy. An entire mini-trial would occur, such a sideshow would surely mislead and confuse the jury, would waste substantial time, and would create unfair prejudice to Plaintiff. These consequences far outweigh whatever relevance such testimony might have. *Fed. R. Evid.* 403.

Personal-preference statements are not proper fact witness testimony, are excessively speculative and are too tenuous to have any tendency to make the existence of any fact relating to Defendant's liability more or less probable. *Fed. R. Evid.* 401-402. Hypothetical questions posed to defense witnesses should also be excluded under Rule 701, for lay witnesses can testify based on their personal knowledge and observations but are prohibited from answering hypothetical questions. *United States v. Urena*, 659 F.3d 903 (9th Cir. 2011).

### MIL 12 – MOTION TO EXCLUDE ANY FDA ADVISORY COMMITTEE RECOMMENDATIONS AND POSITION STATEMENTS FROM ADVOCACY GROUPS

Plaintiff seeks to preclude Coloplast from raising any argument, evidence or testimony regarding the FDA Advisory Committee recommendations as well as Position Statements from any physician advocacy groups.[1] Such evidence would be inadmissible

---

[1] In particular, the American Urogynecologic Society ("AUGS"), the American College of Obstetricians and Gynecologists ("ACOG") and Society of Urodynamics, Female Pelvic Medicine and Urogenital Reconstruction ("SUFU").

hearsay and "fail the Rule 403 balancing test." *Nunez*, 2020 WL 2315077 at *30; *see also Salinero*, 2019 WL 7753438 at *9 (holding same).

In *Huskey*, the Fourth Circuit affirmed the trial court's exclusion of this evidence under Rule 403 because of the potential for the jury to provide too much deference to the Advisory Committee's conclusions and/or misunderstanding the Advisory Committee's conclusion, specifically confusing what the Advisory Committee "deems other literature to say about the [mesh product's] safety and what the FDA itself found about the [mesh product's] equivalence to an earlier device." *Huskey*, 848 F.3d at 161.

For the same reasons, Plaintiff moves to preclude any argument, evidence or testimony relating to the March 2013 AUGS "Position Statement on Restriction of Surgical Options for Pelvic Floor Disorders" ("Pelvic Floor Position Statement"). These Position Statements are demonstrably unscientific and litigation-driven. The Pelvic Floor Position Statement, a copy of which is attached hereto as **Exhibit C**, which generally alleges there is no justification for restricting abdominal placement of mesh for treatment of prolapse.

The Position Statement purports to dictate not only the "standard of care," but also to decide the safety and efficacy of a material generally and of entire categories of medical devices – even though those devices have injured tens of thousands of women. This threatens to usurp the role of the jurors who will decide this case. The Eleventh Circuit recently held in no uncertain terms in *Adams v. Lab. Corp. of America*, 760 F.3d 1322 (11th Cir. 2014), that these sort of litigation-driven "position statements" cannot be

allowed to usurp the role of the factfinder.  In *Adams*, the Eleventh Circuit properly instructed that "neither *Daubert* nor *Kumho* permits a scientific or medical community to define a 'litigation standard'…." *Id.* at 1333. Whether or not these devices are safe and effective, to quote *Adams*, "is a decision to be made by courts, not by self-interested associations." *Id.* at 1332.  The same is true here – whether polypropylene mesh is any sort of "standard," or whether it is "safe and effective," as the Position Statement alleges, is for the juries hearing these cases to decide – not AUGS or any other interest group.

Further, the Position Statement was drafted more than two-years after Ms. Caddy's implant surgery making it irrelevant to any of the claims or issues in this case. *Fed. R. Evid.* 401-402. Allowing the introduction of a litigation driven statement, drafted with the benefit of hindsight would also be unduly prejudicial to Plaintiff and should be excluded. *Fed. R. Evid. 403.*

The Position Statement, and any similar out-of-court statement by an advocacy group, must be excluded from evidence, and no reference or argument based thereon should be allowed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motions *in Limine* on General Issues should be granted.

Respectfully submitted,

DATED: September 21, 2020

By: /s/ Chris W. Cantrell
Chris W. Cantrell (SBN 290874)
**DOYLE APC**
550 West B Street, Fourth Floor
San Diego, CA 92101
Telephone: (619) 736-0000
*Attorney for Plaintiff*

Robert Salim, Esq.
Lisa Causey-Street, Esq.
**SALIM BEASLEY LLC**
1901 Texas Street
Natchitoches, LA 71457
Telephone: (318) 354-1818
Facsimile: (318) 354-1227

William J. Doyle (SBN 188069)
John Lowther (SBN 207000)
**DOYLE LOWTHER LLP**
4400 NE 77th Avenue, Suite 275
Vancouver WA 98662
Telephone: (360) 818-9320
Facsimile: (360) 450-3116

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE ON GENERAL ISSUES

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 21, 2020, a true and correct copy of the foregoing Plaintiff's Memorandum of Points and Authorities in Support of Motion in Limine was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this case.

Respectfully Submitted,


/s/ Chris W. Cantrell
Chris W. Cantrell (SBN 290874)
**DOYLE APC**
550 West B Street, Fourth Floor
San Diego, CA 92101
Telephone: (619) 736-0000

Attorney for Plaintiff

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE ON GENERAL ISSUES